Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MAYRA SYLVETTE GRANA RAFFUCCI, RUBÉN RIVERA CARRIÓN, LA SOCIEDAD LEGAL DE GANANCIALES POR ELLOS COMPUESTA<br><br>Apelados<br><br>v.<br><br>TRIPLE-S SALUD, INC.<br><br>Apelante | KLAN202400969 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso número: PO2021CV01151<br><br>Sobre: Incumplimiento de Contrato |

Panel integrado por su presidente, el juez Adames Soto, la juez Aldebol Mora y la juez Díaz Rivera.[1]

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 30 de mayo de 2025.

Comparece ante nos la parte apelante, Triple-S Salud Inc., mediante el presente recurso de *Apelación* y nos solicita que revoquemos la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 27 de septiembre de 2024. En el referido dictamen, el foro primario declaró Ha Lugar la demanda incoada por la parte apelada, Mayra S. Grana Raffucci, Rubén Rivera Carrión y la Sociedad Legal de Bienes Gananciales compuesta por ambos, condenando a Triple-S Salud, Inc., al pago de la suma de noventa y ocho mil trecientos diecisiete dólares con seis centavos ($98,317.06) e imponiéndole la suma de veinte mil dólares ($20,000.00) a este último en concepto de honorarios de abogado por temeridad.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

---

[1] Mediante Orden Administrativa OATA-2025-070 de 9 de mayo de 2025, se designó a la Hon. Karilyn M. Díaz Rivera en sustitución del Hon. Abelardo Bermúdez Torres.

**I**

El 19 de mayo de 2021, Mayra S. Grana Raffucci (Grana Raffucci), Rubén Rivera Carrión (Rivera Carrión) y la Sociedad Legal de Bienes Gananciales compuesta por ambos (parte apelada) incoaron una *Demanda* sobre incumplimiento de contrato contra Triple-S Salud, Inc. (Triple-S o parte apelante).[2] En la aludida reclamación, la parte apelada alegó que adquirió una póliza de seguro de salud hace más de veinte (20) años, que se renueva anualmente, con Triple-S con la tarjeta número ZUA0012346638959, bajo la Póliza 25A.

Expresó que, bajo la cubierta emitida por Triple-S, Grana Raffucci fue evaluada y diagnosticada con *Anorectal Polyp: Basaloid Squamou Cell Carcinoma* a principios del año 2019. Arguyó que, a los fines de recibir tratamiento para el cáncer, Grana Raffucci se trasladó de manera temporal al Tampa General Hospital (TGH) en el Estado de Florida, en el cual recibió radiación y quimioterapia. Adujo que, para recibir los tratamientos brindados en el TGH presentó su tarjeta de plan médico expedida por Triple-S, pero que esta última se negó a pagar el tratamiento recibido a los proveedores del servicio médico en el TGH. Por tal razón, alegaron que tuvieron que pagar por los servicios médicos recibidos por Grana Raffucci y para el mes de noviembre de 2019, presentaron una solicitud de reembolso de gastos a Triple-S. Adujeron que Triple-S, en alto incumplimiento de las cubiertas de su contrato, se negó a pagar los reembolsos reclamados, por lo cual le solicitó al foro primario le ordenara a Triple-S a pagar la suma de ciento treinta y ocho mil trecientos veintiocho dólares con diecinueve centavos ($138,328.19).

---

[2] Apéndice del recurso, págs. 41-42.

Por su parte, el 28 de julio de 2021 Triple-S presentó una *Moción de Desestimación*.[3] En la referida moción, alegó que procedía la desestimación de la acción instada en su contra porque Grana Raffucci incumplió con el procedimiento de precertificación previo, requerido por la Póliza 25A, como condición para la aprobación y cubierta de servicios y medicamentos recibidos en Estados Unidos. Adujo que, conforme a los términos de la Póliza 25A, todo asegurado debe obtener una precertificación para aquellos servicios que pretenda recibir en los Estados Unidos siempre y cuando estos servicios no sean de emergencia. Arguyó, además, que Grana Raffucci debió solicitar una precertificación antes de recibir el tratamiento para el cáncer en el TGH, pues la presentación de la tarjeta de Triple-S a un proveedor de Blue Cross and Blue Shield Association no es suficiente para activar los beneficios de la póliza en casos como este, en donde no se trataba de una emergencia médica. Por tal razón, adujo que el reembolso solicitado por Grana Raffucci era improcedente y que carecía de una causa de acción que justificara la concesión de un remedio.

Por otra parte, el 9 de agosto de 2021, la parte apelada presentó su *Réplica a Moción para Desestimar*.[4] En síntesis, se opuso a los planteamientos realizados por Triple-S.

Evaluado el petitorio sumario, el 13 de agosto de 2021, el Tribunal de Primera Instancia emitió una *Resolución* en la cual declaró No Ha Lugar la *Moción de Desestimación* presentada por Triple-S, pues razonó que de las alegaciones de la *Demanda* surgía una causa de acción plausible contra Triple-S.[5]

---

[3] Apéndice del recurso, págs. 43-47. Junto a este escrito, Triple-S presentó la póliza Plan 25(Alt.1) con fecha del 3 de marzo de 2021. Véase, Apéndice del recurso, págs. 48-210.

[4] Íd. págs. 210-212. Junto a este escrito, la parte apelada presentó una *Declaración Jurada* suscrita por Grana Raffucci con fecha del 9 de agosto de 2021. Véase, Apéndice del recurso, págs. 213-214.

[5] Apéndice del recurso, págs. 215-226.

Posteriormente, el 20 de septiembre de 2021, Triple-S presentó su *Contestación a la Demanda.*[6] En el referido escrito, presentó sus alegaciones responsivas y esbozó sus defensas afirmativas. En especial, alegó que el TGH no era parte de la Red de Participantes y Proveedores de Triple-S. Adujo que, si un servicio requiere precertificación para quedar cubierto bajo la póliza y el beneficiario no cumplía, Triple-S no era responsable por el pago de dichos servicios. Arguyó que si un beneficiario de la Póliza 25A recibía un servicio en los Estados Unidos, sin que fuese por una emergencia, Triple-S requería una precertificación para que se pudiera realizar el pago de estos.

Tras culminar el descubrimiento de prueba, ambas partes instaron mociones de sentencia sumaria el 24 de abril de 2023. En primer lugar, la parte apelada presentó su *Moción Solicitando Sentencia Sumaria.*[7] En el referido escrito, alegó que procedía dictar sentencia por la vía sumaría a su favor, pues estando bajo la cubierta de la póliza de Triple-S, Grana Raffucci fue diagnosticada con un carcinoma, una enfermedad cubierta bajo la referida póliza, y a los fines de recibir tratamiento para el cáncer se trasladó al estado de Florida donde le fue provisto el tratamiento en el TGH. Reiteró que Triple-S se negó a pagarle a los proveedores del tratamiento de Grana Raffucci, por lo que esta última, junto a Rivera Carrión, se vieron en la necesidad de subsidiar el procedimiento médico por sí mismos. Arguyó que había presentado una solicitud de reembolso de gastos a Triple-S, pero esta se negó a pagarlo, en incumplimiento de su contrato.

Por otro lado, Triple-S instó una *Moción de Sentencia Sumaria.*[8] En síntesis, alegó que procedía dictarse sentencia

---

[6] Íd. págs. 231-237.
[7] Íd. págs. 252-257.
[8] Apéndice del recurso, págs. 280- 291.

sumaria a su favor, pues en el momento en el que Grana Raffucci decidió -de manera voluntaria- trasladarse al estado de Florida a realizarse el tratamiento para su cáncer, sin una preautorización de la aseguradora y sin ser esto una situación de emergencia, asumió la responsabilidad de costearlo. Arguyó que no tenía una responsabilidad contractual de pagar por los servicios que Grana Raffucci recibió en el TGH, pues estos estaban excluidos en los términos de la Póliza 25-A, cuando hay tratamientos disponibles en Puerto Rico.

Luego de evaluar los escritos y sus oposiciones, el 17 de julio de 2023, el Tribunal de Primera Instancia emitió una *Resolución* en la cual declaró No Ha Lugar la *Moción Solicitando Sentencia Sumaria* presentada por la parte apelada. En específico, el foro de origen razonó que la póliza permitía el pago de los servicios prestados a Grana Raffucci sin precertificación o que no sean de emergencia a base de las tarifas establecidas por Triple-S para sus proveedores participantes en Puerto Rico. No obstante, determinó que existía controversia sobre la cuantía reclamada por concepto de reembolso por el tratamiento médico recibido por Grana Raffucci. A su vez, declaró No Ha Lugar la *Moción de Sentencia Sumaria* presentada por Triple-S en donde solicitó la desestimación de la demanda.[9] En particular, el foro *a quo* emitió las siguientes determinaciones de hechos:

1. Es un hecho que los demandantes adquirieron la póliza de seguro emitida por Triple-S Salud que identifica a dicho proveedor como concesionario independiente de la "Blue Cross and Blue Shield Association". Véase caratula impresa y primera página de la póliza. Exhibit 2[.]

2. Es un hecho que la Sra. Grana fue diagnosticada con cáncer. Véase resultados de la biopsia de febrero 2019. Exhibit 3[.]

3. Es un hecho que la póliza contiene cubierta para los servicios de cáncer incluyendo tratamientos

---

[9] Íd. págs. 1662-1688.

quimioterapia y radioterapia y los exámenes para detectarlo. Véase página 59 de la póliza. Exhibit 4[.]

4. Es un hecho que la póliza contempla el pago por servicios prestados fuera de Puerto Rico. Véase párrafo 8 de la página 66 de la póliza que indica: "Si el servicio se presta fuera de Puerto Rico, se pagará a base de las tarifas establecidas por los planes de la "Blue Cross and Blue Shield Association" ... Exhibit 5[.]

5. Es un hecho que la póliza provee para el rembolso de gastos médicos. Véase párrafo A. REMBOLSO de la página 67 de la póliza. Exhibit 6[.]

6. Es un hecho que la póliza define el programa BLUECARD como sigue: "El programa que permite el procesamiento de reclamaciones por servicios cubiertos fuera del área geográfica de Puerto Rico y que se pagan a base de las tarifas negociadas por el "Blue Cross and Blue Shield Association". Véase definición número 77 de la página 162 de la póliza. Exhibit 7[.]

7. Es un hecho que la demandante [le] solicitó a Tripe-S Salud el rembolso de los gastos médicos incurridos por ella. Véase declaración jurada suscrita por la Sra. Mayra S. Grana y el desglose de gastos anejado a ella. Exhibit 8[.]

8. El 21 de enero de 2019, el esposo de la Demandante y codemandante en este caso, quien es psiquiatra con práctica privada en Ponce, el Dr. Rubén Rivera Carrión, firmó una orden médica para que la Sra. Mayra Grana se realizara una colonoscopía. Anejo 1, Expediente del Dr. Arnaldo Nieves, bate Triple-S-0209.

9. La póliza de seguro de salud de Triple-S[,] bajo la cual se reclama en el caso de epígrafe[,] tiene una vigencia de un año, a partir de 1 de febrero de 2019. Anejo 2, Contrato de Seguro.

10. El 22 de febrero de 2019, la demandante Mayra Grana, se sometió a una endoscopía, de la cual extrajeron una muestra para hacerle una biopsia. Anejo 1, Expediente del Dr. Arnaldo Nieves, bate Triple-S-0195.

11. El resultado de la biopsia, con fecha de 27 de febrero de 2019, identificó un carcinoma escamoso basaloide (basaloid squamous cell carcinoma). Anejo 1, Expediente del Dr. Arnaldo Nieves, bate Triple- S-0194.

12. El gastroenterólogo que le hizo el estudio, el Dr. Arnaldo Nieves, cuyas oficinas ubican en Ponce, refirió a la Sra. Grana a un cirujano colorrectal con oficinas en San Juan, a quien identificó como el Dr. Luis Tous. Anejo 1, Expediente del Dr. Arnaldo Nieves, bate TripleS0172; Anejo 3, Deposición de Mayra Grana, pág. 15, línea 11, a la pág. 16, línea 24; pág. 31, líneas 4 a la 8.

13. En la cita que tuvo la Sra. Grana el 1 de marzo de 2019 con el gastroenterólogo Arnaldo Nieves le coordinaron una cita con el cirujano colorrectal referido, Luis Tous, para el 4 de marzo a las 8:00 AM. Anejo 1, Expediente del Dr. Arnaldo Nieves, bate Triple-S-0172.

14. Según la Sra. Grana, el cirujano colorrectal Luis Tous1[*sic*] le recomendó hacer una cirugía para extirpar el cáncer, pero que era posible que luego de esa intervención, tuviera que someterse a quimioterapia y radioterapia para extirpar el cáncer por completo. Anejo 1, Expediente del Dr. Arnaldo Nieves, bate Triple-S-0194.

15. La Sra. Grana tuvo reservas con la recomendación del Dr. Tous y, luego de hablar con su hijo, fisiatra de profesión, aceptó la propuesta de su hermana, una oncóloga pediátrica con práctica en el estado de Florida, de trasladarse a una institución allá en la cual supuestamente tenían una tecnología más avanzada para el tratamiento de cáncer del colon que en Puerto Rico. Anejo 3, Deposición de Mayra Grana, pág. 17, línea 21 a la pág. 18, línea 12.

16. Cuatro días después de su cita con el Dr. Tous, la Sra. Grana tuvo su primera cita en el Hospital General de Tampa ("HGT") el 8 de marzo de 2019 con el Dr. Jorge Marcet. Anejo 4, Expediente del HGT, pág. 34.

17. Ese mismo día, el 8 de marzo de 2019, la especialista de acceso al paciente del HGT, Carmen Lebrón, advirtió a la Sra. Grana que se comunicó con Triple-S en Puerto Rico, y que el supervisor que le atendió [le] informó que si el tratamiento cuya cobertura se solicitaba estaba disponible en Puerto Rico, no se autorizaría el tratamiento. Anejo 4, Expediente del HGT, pág. 13.

Spoke with patient and advised her that per Sup Charlie at Triple SSS, I can fax my auth request to them with clinicals. Charlie advised that if the services and treatment is available in PR that they will not auth for her to have it done here [en Tampa], that she can go back home to have it done there [en Puerto Rico]. Patient advised she didn't want to be treat in P[R] because they did diagnose her but they staged her incorrectly. FAS ["Financial Assistance Specialist"] Ana & Sandra will be working with the patient on a Medicaid app. I will email information to FAS for cleareance. Anejo 4, Expediente del HGT, pág. 13.

18. A pesar de que en el expediente consta esa nota de que se orientó a la Sra. Grana que Triple-S denegaría la cobertura si tenía alternativas de tratamiento disponible en Puerto Rico, la Sra. Grana decidió quedarse en el hospital ubicado en el estado de la Florida para recibir el tratamiento. Anejo 4, Expediente del HGT, pág. 13.

19. La Sra. Grana comenzó a hacerse estudios en el HGT el 12 de marzo de 2019. Anejo 4, Expediente del HGT, págs. 48 a 57.

20. El 14 de marzo de 2019, se le instaló el "Mediport", que es un tipo de catéter por el cual se administran los medicamentos. Anejo 5, Expediente del Dr. Marcet en el HGT, pág. 4.

21. Según el recuerdo de la Sra. Grana, el día que le instalaron el Mediport, una empleada del HGT a la que identificó como Ana Olivo llamó telefónicamente a Triple-S en su presencia para indagar si el tratamiento sería cubierto. Al salir de la intervención ese mismo día, la Sra. Olivo le aclaró que Triple-S no cubriría el tratamiento. Anejo 3, Deposición de Mayra Grana, pág. 24, línea 2, a la pág. 25, línea 18.

22. En la declaración jurada que prestó la Sra. Grana el 9 de agosto de 2021, y que se anejó a su Oposición a la Moción de Desestimación (Doc. 11), la Sra. Grana identificó las gestiones de la Sra. Olivo como la solicitud de preautorización de servicios a Triple-S. Anejo 7, Declaración Jurada de Mayra Grana, pág. 1, [párr.] 7.

23. Sin embargo, en el expediente de la Sra. Grana en el HGT no constan notas de Ana Olivo, quien fue la especialista en asistencia económica que atendió su caso, sobre esa conversación ni sobre ningún otro asunto, como sí constan las notas de la Sra. Lebrón de 8 de marzo de 2019. Anejo 8, Expediente del HGT.

24. Como parte del expediente médico de la Sra. Grana en el HGT, en cada visita, con su firma ella garantizó que:

By signing below, either as patient or guarantor, I understand and agree that all charges on this admission are due and payable at time of discharge. In the event there may be any third party source(s) for payment including but not limited to insurance and / or self-funded employee benefit plans, I understand and agree that I am nevertheless responsible for the full obligation until and unless such third party source(s) accept responsibility and pays according to terms of such source(s) and to the extent allowable by law, I understand and agree that I am personally responsible for such portion. In the event that any third party source(s) rejects payment, on such declination and upon notification by Tampa General Hospital to me, I understand and agree that I shall be personally responsible for such obligation. Véase, por ejemplo, Anejo 4, Expediente del HGT, págs. 44, 61, 83, 134, 219, 234, 271, 331 y 418.

25. Según admitió bajo juramento, la Sra. Grana no buscó una segunda opinión de un cirujano colorrectal que prestara servicios en Puerto Rico antes de trasladarse al estado de Florida. Anejo 3, Deposición de Mayra Grana, pág. 31, línea 22, a la pág. 32, línea 16.

26. La Póliza de la Sra. Grana establece que:

Hay ciertos servicios y medicamentos que requieren la aprobación previa de Triple-S Salud antes de que el asegurado pueda recibirlos. El asegurado o el proveedor es responsable de solicitar una precertificación del servicio. Refiérase a las Secciones de Precertificaciones, Procedimiento de Trámite de Precertificaciones y Preautorizaciones para Medicamentos para obtener una lista detallada de los servicios que requieren una precertificación y el proceso que el asegurado o proveedor deben seguir para obtener la precertificación del plan. Para que los servicios se consideren cubiertos por el plan, el asegurado debe cumplir con el requisito de la precertificación previa. En los casos en que Triple-S Salud requiera precertificación o autorización previa a la prestación de servicios, Triple-S Salud no será responsable por el pago de dichos servicios, si los mismos han sido prestados o recibidos sin dicha precertificación o autorización previa por parte de Triple-S Salud. [Énfasis suplido]. Anejo 6, Póliza Plan 25, págs. 19 y 20.

27. La Póliza define precertificación como: PRECERTIFICACIÓN: La autorización previa expedida por Triple-S Salud para el pago de cualquiera de los beneficios y cubierta bajo esta póliza y sus endosos. Algunos de los objetivos de la precertificación son:

evaluar si el servicio es médicamente necesario, evaluar la adecuacidad del lugar de servicio, verificar la elegibilidad de la persona asegurada para el servicio que se está solicitando y si el mismo está disponible en Puerto Rico. Las precertificaciones se evalúan a base de las políticas de precertificaciones que Triple-S Salud establezca de tiempo en tiempo.
[…]
Triple-S Salud no es responsable por el pago de dichos servicios si los mismos han sido prestados o recibidos sin dicha autorización por parte de Triple-S Salud. [Énfasis suplido]. Anejo 6, Póliza Plan 25, pág. 152, inciso 75.

28. La sección de Precertificaciones de la Póliza 25A expresamente requiere la precertificación de aquellos servicios que se reciban en Estados Unidos, siempre y cuando no sean servicios de emergencia. Anejo 6, Póliza Plan 25, pág. 103.

29. La Póliza 25 A define emergencia como:

Una condición médica o del comportamiento que se manifiesta con síntomas agudos de suficiente gravedad, incluido el dolor intenso, de manera que una persona lega, prudente, con un conocimiento promedio de medicina y salud, puede deducir que la falta de atención médica inmediata puede poner en serio peligro la condición de salud de la persona afectada por tal condición o resultaría en una sería disfunción de cualquier miembro u órgano del cuerpo o, con respecto a una persona asegurada durante su embarazo, la

salud de la persona asegurada o del feto, o en el caso de un trastorno del comportamiento, puede poner la condición de salud de dicha persona o de otras personas en grave peligro; causar problemas en las funciones corporales de dicha persona; causar disfunción grave de cualquier órgano o parte del cuerpo de dicha persona o desfiguración grave. Por ejemplo, una condición de emergencia puede incluir, pero no se limita a las siguientes condiciones:
a. Dolor severo en el pecho
b. Lesiones graves o múltiples
c. Dificultad respiratoria severa
d. Un cambio repentino en el estado mental (por ejemplo, desorientación)
e. Sangrado severo
f. Dolor o condiciones que requieren atención inmediata, tales como ataque al corazón o sospecha de apendicitis aguda
g. Intoxicaciones
h. Convulsiones
Anejo 6, Póliza Plan 25, pág. 147, inciso 36. [Énfasis suplido].

30. El expediente de la Sra. Grana en el HGT la describía al momento de acudir a recibir tratamiento como una paciente asintomática que no expresa sangre ni dolor rectal. Anejo 4, Expediente del HGT, págs. 23 y 34.

31. El 18 de mayo de 2021, la Sra. Grana y su esposo presentaron una Demanda para reclamar a Triple-S $138,328.19 como reembolso por el tratamiento que alegadamente recibió en Florida. Véase, Demanda.[10]

Del mismo modo, el foro primario estableció las siguientes controversias:

1. ¿A cuánto asciende[n] los gastos incurridos para el tratamiento recibido por la parte demandante en el Tampa General Hospital?

2. ¿Cuáles son las tarifas establecidas por Triple S para sus proveedores participantes en Puerto Rico que brindan el tratamiento médico recibido por la parte demandante?[11]

Así las cosas, tras varios incidentes procesales, incluyendo recursos ante ambos foros revisores y la celebración de una vista el 23 de agosto de 2024, el Tribunal de Primera Instancia emitió y notificó una *Sentencia* el 27 de septiembre de 2024, mediante la cual declaró Ha Lugar la *Demanda.* En su consecuencia, condenó a

---

[10] Apéndice del recurso, págs. 1683-1686.
[11] Íd. pág.1686.

Triple-S al pago de la suma de noventa y ocho mil trescientos diecisiete dólares con seis centavos ($98,317.06) en concepto de reembolso a la parte apelada y le impuso la suma de veinte mil dólares ($20,000.00) por concepto de honorarios de abogado por temeridad.[12] El foro sentenciador esbozó las siguientes determinaciones de hechos:

1. En la vista declaró la demandante Mayra S. Grana Raffucci quien en su testimonio relató que en el 2019 se hizo una colonoscopía de rutina que salió con algo que no le gustaba al Gastroenterólogo. Salió que era un Carcinoma en el recto. Fue al Dr. Luis Tous, especialista cirujano colorrectal, junto a su hijo médico. Le explicó las alternativas en Puerto Rico para tratar ese tipo de cáncer de colon que es el tipo que causa más muertes en ciudadanos americanos latinos en todo Estado Unidos:

A. cirugía para remover parte del intestino y colon;

B. quimio y radioterapia

2. La demandante Sra. Mayra S. Grana Raffucci testificó que en Puerto Rico los especialistas le diagnosticaron un cáncer "que no era tan severo" pero que recomendaban cirugía para remover el área del intestino y después radioterapia. El resultado de la operación sería la incontinencia y el uso de "pampers" por resto de vida.

3. Ante ese diagnóstico de cáncer colorrectal su marido médico, su hijo médico, y hermana médico que está en Florida, le recomendaron a la demandante Sra. Mayra S. Grana Raffucci trasladarse para una segunda opinión. Los especialistas del Hospital de Florida le hicieron un CT Scan y diagnosticaron un cáncer severo, carcinoma Tipo 1 con seis (6) metástasis de cáncer Tipo 1 a Tipo 3. En el hospital de Florida le recomendaron que ese tipo de cáncer se tiene que tratar de Emergencia porque cambia rápido a ser más agresivo, que de no tratarse de forma rápida y urgente se complicaría hasta costarle la vida.

4. La demandante Sra. Mayra S. Grana Raffucci testificó que ante el diagnóstico severo y de emergencia, al ser un asunto de vida o muerte, quería salvarse la vida. En el Hospital de Florida le recomendaron comenzar lo antes posible tratamiento de radioterapia y quimioterapia intensa allí. Le diagnosticaron que con ese tratamiento pudiera curarse. Esto lo entendió como un[a] emergencia si no comenzaba el tratamiento le pudiera costar la vida al empeorar el cáncer, que fue diagnosticado diferente en Puerto Rico al resultar estar metastizado y más agresivo, y se recomendó

---

[12] Apéndice del recurso, págs. 1-40.

tratamiento que no le fue ofrecido ni estaba disponible en Puerto Rico. Así lo comunicó a Triple S. Ante el estado de emergencia de querer salvar su vida, en la aseguradora contestaron que le cubrirían lo que pagara por rembolso.

5. La demandante al comenzar a recibir el tratamiento recomendado para evitar la complicación del cáncer diagnosticado en el estado de Florida hizo el trámite por teléfono con la aseguradora conforme las instrucciones de su póliza Plan 25 (Alt. 1) — 02/2019, P. 147 :

"Como presentar una reclamación a Blue Cross Blue Shield Global Care Cuando las personas aseguradas pagan por los servicios cubiertos fuera del area de servicio de BlueCard, ellos deben presentar una reclamación para recibir reembolso. Para las reclamaciones institucionales y profesionales, las personas aseguradas deben completar un formulario de reclamación de Blue Cross Blue Shield Global Care y enviar el formulario de reclamación con el estado de cuenta detallado del proveedor a la dirección de Blue Cross Blue Shield Global Care Service Center para iniciar el proceso de reclamación. Usted puede obtener el formulario de reclamación llamando a Triple-S Salud[,] al Blue Cross Blue Shield Global Core Service Center[,] o en l[í]nea en www.bcbsqlobalcore.com. Las personas aseguradas que necesiten ayuda para presentar sus reclamaciones, deben llamar a Blue Cross Blue Shield Global Core Service Center al 1-800-810-BLUE (2583) o llamar a cobro revertido al 1-804-673- 1177, las 24 horas del dia, los siete dias de la semana.

6. El Plan 25, póliza de seguro que tenía demandante Sra. Mayra S. Grana Raffucci, dispone sobre los servicios de cáncer a la página 57:

SERVICIOS DE CÁNCER
Conforme a los requisitos de la Ley Núm. 107 del año 2012, esta póliza establece igualdad de cubierta para el tratamiento de quimioterapia contra el cáncer en sus varios métodos de administración tal como por vía intravenosa, oral, inyectable o intratecal; según sea la orden médica del médico especialista u oncólogo.
Esta póliza cubre exámenes pélvicos y todos los tipos de citología vaginal que puedan ser requeridos para detectar, diagnosticar y tratar en etapas tempranas anomalías que puedan conducir al cáncer cervical. También cubre servicios ambulatorios para el tratamiento de cáncer como radioterapia y cobalto.
En cumplimiento con la Ley Núm. 275 del 27 de septiembre de 2012, Triple-S Salud no rechaza o deniega ningún tratamiento que esté pactado y/o dentro de los términos y condiciones del contrato de salud suscrito entre las partes a cualquier paciente diagnosticado con cáncer o sobreviviente de cáncer, cuando medie una recomendación médica a esos fines. Además, cubre todos los servicios y beneficios preventivos mencionados bajo la ley federal ACA para la detección temprana de cáncer de seno y también

estudios y pruebas de monitoreo de cáncer de seno, tales como visitas a especialistas, exámenes clínicos de mamas, mamografías, mamografías digitales, mamografías de resonancia magnética y sonomamografías, y tratamientos como pero no limitados a, mastectomías, cirugías reconstructivas posterior a la mastectomía para la reconstrucción del seno extraído, la reconstrucción del otro seno para lograr una apariencia simétrica, las prótesis de seno, tratamiento por complicaciones físicas durante todas las etapas de la mastectomía, incluyendo el linfedema (inflamación que a veces ocurre después del tratamiento de cáncer de seno), así como cualquier cirugía reconstructiva post-mastectomía necesaria para la recuperación física y emocional del paciente.

En cumplimiento con la Ley Núm. 79 de 1 de agosto de 2020, Ley Especial para Asegurar el Acceso al Tratamiento y Diagnóstico de los Pacientes de Cáncer en Puerto Rico" conocida como "Ley Gabriela Nicole Correa", se establece lo siguiente:

• Triple-S Salud no rechaza o deniega ningún tratamiento que esté pactado y/o dentro de los términos y condiciones del contrato de salud suscrito entre las partes a cualquier paciente diagnosticado con cáncer o sobreviviente de cáncer, cuando medie una recomendación médica a esos fines. Esto incluye los tratamientos, medicamentos y pruebas diagnósticas, incluidas en las guías de la Red Nacional Integral del Cáncer ("NCCN Guideliness") y/o aprobados por la Administración de Alimentos y Drogas (FDA, por sus siglas en inglés), así como los necesarios para atender y minimizar sus efectos adversos, sujeto a las disposiciones de la presente Ley. También se utilizará el "Local Coverage DeterminationsLCD from First Coast Service Options, INC", "Medicare Approved Compendia List", "National Coverage Determations Alphabetical Index", "Milliman Care Guidelines".

• En adición a remitir su aprobación o denegación de medicamentos, tratamientos y pruebas diagnósticas enumeradas en las guías de la Red Nacional Integral del Cáncer ("NCCN Guideliness") o de las aprobadas por la Administración de Alimentos y Drogas (FDA), dentro de un término de 24 a 72 horas de recibida la solicitud o dentro del término de 24 horas, de tratarse de un caso marcado urgente o expedito.

7. La demandante relató que estaba en "shock" con el diagnóstico que le dieron en Florida, y porque en otro trámite ante la aseguradora Triple S le contestaron que tenía que pedir permiso para comenzar el tratamiento recomendado, trámite que podía tardar meses, tiempo que no tenía por el tipo de cáncer. La demandante quería proteger y salvar su vida.

8. Al día de hoy, cinco (5) años después del tratamiento de quimioterapia y radioterapia provisto en Florida la demandante Sra. Mayra S. Grana Raffucci se curó de cáncer y vive una vida saludable sin cáncer gracias al tratamiento de emergencia que le dieron en Florida para proteger y extender la vida. A este testimonio el Tribunal le dio completa credibilidad. Este testimonio no fue

refutado por prueba de la parte demandada fuera de un patrón de objeciones para impedir que la demandante tuviera su día en corte y fuera escuchada en un caso que tiene tres (años). La aseguradora desde el comienzo del caso ha presentado un patrón de rechazar atender las solicitudes de la parte demandante, que continuo en el Tribunal al comenzar con mociones de desestimación y sentencia sumaria por una interpretación restrictiva de la póliza en contra de la protección y extensión de la vida de la paciente asegurada aquí demandante.

9. La demandante Sra. Mayra S. Grana Raffucci identificó todos los exhibit presentados por estipulación detallando las cuantías indicadas en los mismos y manifestó haber pagado por los servicios médicos detallados en los exhibits 1 a 4 correspondiente a los servicios de USF Health, Gulf to Bay Anes Assoc. LLC, University Med SVC ASSOC, INC. y Tampa General Hospital. De los mismos se desprenden gastos médicos por la suma de $133,224.44. El testimonio sobre el hecho de haber pagado estas facturas merece entera credibilidad.

10. La demandante reconoció además los exhibits 5, 6 y 7 correspondientes a las solicitudes de rembolso presentadas a Triple - S, el 11 de noviembre de 2019. De las mismas surge la información de los proveedores, la fecha y la descripción del servicio con unos códigos de procedimiento y cantidades pagadas de esto surge que la demandante solicitó a Triple – S el rembolso de la suma de $122,896.33. El testimonio de la demandante reiteró igualmente haber pagado estos gastos y merece entera credibilidad.

11. El esposo de la demandante, el Dr. Rubén Rivera Carrión declaró sobre el hecho de haber llevado las solicitudes de rembolso de gastos a Triple - S y el hecho de que no le han pagado.

12. La aseguradora únicamente presentó el testimonio del Dr. Benjamín Santiago, Vicepresidente de manejo Clínico de la aseguradora Triple S, que confirmó haber preparado el exhibit 8, un Análisis de Triple SSS sobre los Servicios médicos reclamados por la Sra. Grana Rafucci. De su testimonio surge que el documento contiene los nombres de los proveedores que coinciden con los presentados por la Sra. Grana Rafucci, también detallan las fechas de servicios, códigos de procedimientos, descripción y cantidades. El Dr. Santiago confirmó que la información había sido tomada de los documentos provistos por la Sra. Grana Rafucci en el caso. Declaró además sobre la necesidad de unos códigos CPT necesarios para Triple-S procesar las solicitudes de los demandantes.

13. Lo declarado por el Dr. Santiago resulta inconsistente con la prueba. Una simple evaluación de los formularios de solicitudes de rembolso (documento que es preparado y provisto por la aseguradora) se desprende que no contiene dicho requerimiento, sino los códigos de procedimientos que fueron provistos y

surgían de los documentos presentados por la Sra. Grana Rafucci.

14. Desde previa resolución de 17 de junio de 2023, el Tribunal dejó establecido que los demandantes adquirieron la póliza de seguro emitida por Triple-S Salud, que la Sra. Grana Rafucci fue diagnosticada con cáncer, así como que la póliza contiene cubierta para los servicios de cáncer.

15. Le constaba además a la Aseguradora las determinaciones sobre el hecho de que la póliza permite el pago al asegurado de los servicios prestados sin precertificación y que la letra del contrato es ambigua en cuanto al derecho de rembolso.

16. La vista en su fondo nos permite concluir que los demandantes solicitaron el rembolso de gastos por la suma de $122,896.33. (Aunque al Tribunal presentaron facturas por mayor cuantía, el rembolso solicitado fue por dicha suma)

17. La póliza vuelve a ser ambigua en cuanto al rembolso cuando indica que "los gastos médicos cubiertos por concepto de servicios médicos, se rembolsan de acuerdo a las siguientes condiciones:

> 1. El 80% de los gastos médicos cubiertos durante un año póliza, incurridos por el asegurado principal o su dependiente asegurado, sujeto a las limitaciones establecidas en esta cubierta."

18. Al aplicar esto a la solicitud de rembolso resulta que la aseguradora debió pagar la suma de $98,317.06.[13]

El foro *a quo* reafirmó, que, bajo los términos de la Póliza 25-A se permitía el pago a la persona asegurada de los servicios prestados sin precertificación o en casos que no fueran de emergencia, a base de las tarifas establecidas por Triple-S para sus proveedores participantes en Puerto Rico. Razonó que la referida póliza proveía un mecanismo de reembolso aun cuando la persona asegurada no tuviese una precertificación o no se tratase de una emergencia, siendo esto un riesgo transferido a la aseguradora que protege a la persona asegurada. Del mismo modo, el foro de instancia, a raíz de las estipulaciones realizadas por las partes sobre el desglose de cargos para el pago del tratamiento del cáncer de

---

[13] Apéndice del recurso, págs. 12-18.

Grana Raffucci en el TGH y el testimonio de esta, al cual le dio entera credibilidad, concluyó que las facturas presentadas fueron pagadas. Determinó, del mismo modo, que Triple-S demostró un patrón de rechazar los acercamientos y solicitudes de Grana Raffucci para el pago del reembolso. Siendo la cuantía de gastos el único asunto en controversia desde la *Resolución* emitida el 17 de julio de 2023, y quedando demostrado que las solicitudes de reembolso le fueron presentadas a Triple-S desde el año 2019, el foro de origen determinó que Triple-S incumplió con el contrato y ha sido temeraria en litigar un asunto sobre el cual se le había advertido de la ambigüedad de la póliza sobre el derecho a reembolso.

Inconforme, el 28 de octubre de 2024, la parte apelante acude ante esta Curia mediante el recurso de epígrafe y señaló la comisión de los siguientes errores:

> Erró el TPI al permitir que durante el juicio se presentara evidencia que excedió los límites de las controversias que delimitó la *Resolución* del 17 de julio de 2023 y sobre asuntos ya adjudicados, en violación a la ley del caso, el debido proceso de ley de Triple-S y la normativa de la Regla 36.4 de las de Procedimiento Civil.

> Erró el TPI al no exigir a la demandante-apelada el cumplimiento con la Regla de *la mejor evidencia* para probar lo que pagó por su tratamiento, porque al así hacerlo, se legitimizó una violación al contrato entre las partes.

> Erró el TPI al imponer honorarios por temeridad a Triple-S por defenderse de las reclamaciones en su contra basándose en fundamentos legítimos de derecho y sin que hubiese razón alguna para sustentar tal sanción.

> Posteriormente, el 8 de enero de 2025, la parte apelante presentó un *Alegato Suplementario de la Apelante*. Por su parte, el 30 de enero de 2025, la parte apelada presentó *Alegato de la Parte Apelada*.

> Con el beneficio de la comparecencia de las partes, así como con la *transcripción de la prueba oral*, procedemos a resolver.

**II**

**A**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux,* 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín,* supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales

inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

**B**

En nuestro ordenamiento jurídico los derechos y obligaciones adjudicados mediante un dictamen judicial, que advengan final y firme, constituyen la ley del caso. *Cacho Pérez v. Hatton Gotay y otros,* 195 DPR 1, 8 (2016). Como norma general, las controversias

que han sido adjudicadas por el foro de instancia o un foro apelativo no pueden rexaminarse, pues los derechos y las obligaciones adjudicadas gozan de una finalidad o firmeza que ayudan a las partes de un pleito a tener unas directrices confiables y certeras. *Íd.,* pág. 9. Las determinaciones judiciales que constituyen la ley del caso "incluyen todas aquellas cuestiones finales consideradas y decididas por el tribunal". *Íd.* Estas determinaciones, como norma general, obligan tanto al foro de instancia como a el que las dictó, si este vuelve a su consideración. *Félix v. Las Haciendas,* 165 DPR 832, 843 (2005).

No obstante, el Tribunal Supremo de Puerto Rico ha reconocido instancias excepcionales en las cuales no se utilizará la doctrina de la ley del caso. En específico, nuestro más Alto Foro ha expresado que:

> …si el caso vuelve ante la consideración del tribunal y este entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia, ese foro puede aplicar una norma de derecho distinta. *Cacho Pérez v. Hatton Gotay y otros,* supra, pág. 9.

Aunque esta doctrina responde al principio de que las adjudicaciones deben tener un fin, el Foro de última instancia ha reconocido que cuando se presenta un atentado contra la justicia, los tribunales pueden descartar la aplicación de la ley del caso. *Íd.,* pág. 10.

**c**

La Regla 44.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 44.1, establece lo referente a la concesión de costas y honorarios de abogado(a) a favor de una parte. Específicamente, la citada regla les permite a los tribunales imponer el pago de una suma por concepto de honorarios de abogado(a) a una parte que actúa con temeridad durante el proceso judicial. *SLG González-Figueroa v. SLG et al.,* 209 DPR 138 (2022). A esos efectos, el inciso (d) de la precitada regla dispone lo siguiente:

(d) *Honorarios de abogado[(a)]*.—En caso [de] que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado[(a)] que el tribunal entienda correspondan a tal conducta [...].

El Tribunal Supremo de Puerto Rico ha definido el concepto *temeridad* como la actuación terca, obstinada, contumaz y sin fundamentos de un litigante que obliga a la otra parte innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. *SLG González-Figueroa v. SLG et al.,* supra. La conducta temeraria es una actitud que se proyecta sobre el procedimiento y afecta el buen funcionamiento y administración de la justicia. *Íd.*

La determinación de temeridad es un asunto discrecional de los tribunales de primera instancia. *SLG González-Figueroa v. SLG et al.,* supra. Los tribunales apelativos solo pueden intervenir cuando el foro de origen se excede en el ejercicio de discreción. *Íd.* El requisito de la existencia de una actuación temeraria hace que la Regla 44.1 de Procedimiento Civil de 2009, *supra,* tenga el propósito de penalizar o sancionar a la parte que incurre en la conducta proscrita por dicha regla. *Íd.* No obstante, el nuestro más Alto Foro ha relevado del pago de honorarios de abogado(a) a litigantes que pierden un pleito donde hubo controversias fácticas reales que requerían el examen de la prueba testifical y documental. *Santos Bermúdez v. Texaco P.R., Inc.*, 123 DPR 351, 357-358 (1989).

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

En su primer señalamiento de error, la parte apelante alega que el Tribunal de Primera Instancia incidió al permitir que durante el juicio se presentara evidencia que excedió los límites de las

controversias que delimitó la *Resolución* del 17 de julio de 2023 y sobre asuntos ya adjudicados, en violación a la ley del caso, el debido proceso de ley de la parte apelante y la normativa de la Regla 36.4 de las de Procedimiento Civil. No le asiste la razón.

Es norma reiterada en nuestro ordenamiento jurídico, que no se favorece la intervención de los Foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto.

En nuestro ordenamiento jurídico, los derechos y obligaciones adjudicados mediante un dictamen judicial, que advengan final y firme, constituyen la ley del caso. Las controversias que han sido adjudicadas por el foro de instancia o un foro apelativo no pueden reexaminarse, pues los derechos y las obligaciones adjudicadas gozan de una finalidad o firmeza que ayudan a las partes de un pleito a tener unas directrices confiables y certeras. Del mismo modo, las determinaciones judiciales que constituyen la ley del caso son aquellas que incluyen cuestiones finales consideradas y decididas por el tribunal.

En el caso ante nuestra consideración se celebró una vista el 23 de agosto de 2024 para los hechos materiales que estaban en controversia, según dispuesto por el foro de instancia en la *Resolución* emitida el 17 de julio de 2023. Estos son: la cuantía de los gastos incurridos para el tratamiento recibido por la parte apelada en el TGH, así como la tarifa aplicable establecida por Triple-S para los proveedores participantes en Puerto Rico.

Luego de un estudio de la Transcripción de la Prueba Oral, así como de las determinaciones de hechos formuladas por el foro de origen, no vemos indicios de que la parte apelada presentara evidencia que excediera los límites de las controversias establecidas

en la *Resolución* del 17 de julio de 2023. Queda meridianamente claro, que el testimonio de Grana Raffucci se limitó a establecer el contexto de su reclamación de reembolso contra Triple-S y demostrar las cuantías que fueron pagadas para su tratamiento de cáncer en el TGH.

En su segundo señalamiento de error, la parte apelante nos plantea que el foro de instancia erró al no exigirle a la parte apelada el cumplimiento con la regla de la mejor evidencia para probar lo que pagó por su tratamiento, porque al así hacerlo, se legitimizó una violación al contrato entre las partes. No le asiste la razón.

La regla de la mejor evidencia establece que cuando para probar un hecho se descanse en el contenido de un escrito, se debe presentar el original para constatar su contenido.

En el caso ante nuestra consideración, la parte apelante arguye que el foro de instancia erró al no aplicar la regla de la mejor evidencia, pues la evidencia estipulada eran facturas, y no recibos para probar los gastos incurridos por la apelada en su tratamiento de cáncer en el TGH.

Surge de la Transcripción de la Prueba Oral de la vista celebrada el 23 de agosto de 2024[14] y de la *Sentencia* emitida el 27 de septiembre de 2024[15], que ambas partes estipularon la evidencia que iba a ser presentada en el juicio, entre ellas se encontraban:

> Exhibit 1: Detalle de servicios médicos desglosados por ítem de USF Health.
>
> Exhibit 2: Detalle de servicios médicos desglosados por ítem de Gulf to Bay Anes Assoc. LLC.
>
> Exhibit 3: Detalle de servicios médicos desglosados por ítem de University Med SVC ASSOC, INC.
>
> Exhibit 4: Detalle de servicios médicos desglosados por ítem de Tampa General Hospital.

---

[14] Véase, Transcripción de la Prueba Oral (TPO), págs. 5-15.
[15] Véase, Apéndice del recurso, pág. 12.

Exhibit 5: Solicitudes de re[e]mbolso de gastos médicos por el suscriptor presentadas a Triple-S Salud en 11/11/2019 parte 1.

Exhibit 6: Solicitudes de re[e]mbolso de gastos médicos por el suscriptor presentadas a Triple-S Salud en 11/11/2019 parte 2.

Exhibit 7: Solicitudes de re[e]mbolso de gastos médicos por el suscriptor presentadas a Triple-S Salud en 11/11/2019 parte 3.

Exhibit 8: Análisis de Triple SSS de Servicios médicos de Mayra Grana.

Exhibit 9: Póliza.

Del mismo modo, surge de la Transcripción de la Prueba Oral, que Grana Raffucci testificó sobre los gastos incurridos en su tratamiento de cáncer en el TGH. Esta declaró sobre todas las facturas que fueron pagadas, sin que su testimonio fuese refutado por la parte apelante. A este testimonio, el Tribunal de Primera Instancia le dio entera credibilidad; y en ausencia de pasión, prejuicio, parcialidad o error manifiesto, damos completa deferencia al foro de instancia en su apreciación de la prueba oral.

En su tercer y último señalamiento de error, la parte apelante nos señala que el foro de origen incidió al imponerle honorarios por temeridad por defenderse de las reclamaciones en su contra basándose en fundamentos legítimos de derecho y sin que hubiese razón alguna para sustentar tal sanción. Tampoco le asiste razón.

Como mencionamos anteriormente, es norma reiterada que se debe dar deferencia al tribunal inferior, quien tuvo oportunidad de evaluar el trámite procesal del caso. El Tribunal de Primera Instancia tiene amplia discreción para imponer honorarios de abogado por temeridad.

Luego de un análisis sosegado del expediente, colegimos que la determinación de temeridad fue conforme a derecho, toda vez que el Tribunal de Primera Instancia evaluó la actitud del apelante durante el trámite procesal del caso, en especial al rechazar los

acercamientos y solicitudes de la parte apelada para el reembolso de su tratamiento de cáncer. Por consiguiente, el tercer señalamiento de error no se cometió.

En virtud de lo antes expuesto, resolvemos que el Tribunal de Primera Instancia no incidió en la determinación aquí apelada. Por ello, es forzoso concluir que procede la confirmación de la *Sentencia.*

**IV**

Por los fundamentos antes expuestos, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones